**SO ORDERED.**

**SIGNED this 8th day of January, 2013.**



_____
Robert E. Nugent
United States Chief Bankruptcy Judge

_____

DESIGNATED FOR ON-LINE PUBLICATION
BUT NOT PRINT PUBLICATION

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF KANSAS

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | |
| DOOLEY'S RAINWATER | ) | |
| CONDITIONING, INC., | ) | Case No. 10-14145 |
| | ) | |
| Debtor. | ) | |
| _____ | ) | |
| | ) | |
| J. MICHAEL MORRIS, Trustee | ) | |
| | ) | |
| Plaintiff | ) | |
| v. | ) | Adv. No. 12-5042 |
| | ) | |
| KEN DOOLEY, | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

**ORDER DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

The trustee may avoid and recover any transfer of estate property that occurs after the commencement of the case and is neither approved by the court nor authorized by the Bankruptcy

-1-

Code.[1] In chapter 11, the debtor in possession is authorized to conduct the debtor's business by § 1108 and § 363(c)(1) allows the debtor to use property of the estate (other than cash collateral) in the ordinary course without notice and a hearing. Courts deciding whether a postpetition transfer has been made in the ordinary course of business consider whether a hypothetical creditor doing business with the debtor would, in determining whether to advance credit, anticipate that the debtor might make transfers of this sort (the vertical test) and whether the transaction is of a kind ordinarily made in the debtor's industry (the horizontal test).

Applying the vertical test here, I must determine whether like creditors of companies like Dooley's Rainwater Conditioning would anticipate that the companies would engage a "creative" financing arrangement that involved financing their business purchases by paying the owner's brother advances in exchange for charging company purchases on the brother's personal credit card. The horizontal test involves deciding whether arrangements like these are ordinarily made in the debtor's industry or trade. Because neither seems likely to me, and because there remain material factual disputes, defendant's motion for summary judgment is DENIED.

### Jurisdiction

The Court has subject matter jurisdiction over this § 549 avoidance action under 28 U.S.C. § 157(b)(1) and (2)(A) and (O) and § 1334.

### Summary Judgment Standards

Fed. R. Bankr. P. 7056 makes Fed. R. Civ. P 56 applicable in adversary proceedings. Rule 56 (e)(3) permits the granting of summary judgment for movant only if the supporting materials show that

---

[1] 11 U.S.C. § 549(a). Unless otherwise noted, all statutory references are to the Bankruptcy Code, title 11 U.S.C. § 101 et seq. The trustee J. Michael Morris appears for himself. The defendant Ken Dooley appears by his counsel David Eron

-2-

the defendant is entitled to judgment as a matter of law based upon the uncontroverted facts.[2] A genuine dispute of material fact is present when the evidence is such that a reasonable fact finder could return a verdict for the non-movant.[3]

Here, the defendant challenges the trustee's ability to demonstrate the existence of an essential element of a § 549 avoidance action – that the debtor's $8,500 post-petition transfer to defendant was unauthorized.[4] Ken Dooley contends that the debtor's post-petition transfer was authorized by the Bankruptcy Code as an ordinary course transaction. If the transfer was authorized by the Code, the trustee's claim will fail. At trial, the party asserting the validity of the challenged transfer has the burden of proof on that issue.[5] On summary judgment, the Court's function is to determine if there are disputes of material fact about whether the post-petition transfer was authorized and whether the uncontroverted facts support the conclusion as a matter of law that it was an ordinary course transaction.

### *Findings of Uncontroverted Fact*[6]

Dooley's Rainwater Conditioning, Inc. filed for chapter 11 relief on December 10, 2010. After DRC's unsuccessful attempt to submit a confirmable chapter 11 plan, the case was converted to chapter

---

[2] *Reed v. Bennett,* 312 F.3d 1190 (10th Cir. 2002)(Summary judgment is appropriate if the movant has met its initial burden of production under Rule 56(c) that no genuine dispute of a material fact exists and those undisputed facts entitle the movant to judgment as a matter of law.); *Murray v. City of Tahlequah, Okla.,* 312 F.3d 1196, 1199-1200 (10th Cir. 2002) (same).

[3] *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986).

[4] *Celotex Corp. v. Catrett,* 477 U.S. 317, 322-23 (1986); *In re Grabill Corp.,* 135 B.R. 101, 105-06 (Bankr. N.D. Ill. 1991); *Koch v. Shell Oil Company,* 927 F.Supp. 411, 413 (D. Kan. 1996); *Johnson v. Mullin,* 422 F.3d 1184 (10th Cir. 2005).

[5] Fed. R. Bankr. P. 6011.

[6] In addition to the uncontroverted facts gleaned from the summary judgment papers, the Court has also considered the stipulations of fact contained in the final pretrial order. *See* Adv. Dkt. 20, pp. 2-3.

-3-

7 on August 29, 2011. J. Michael Morris was appointed Trustee.

Ken and Michael Dooley are brothers. Michael was the president and owner of Dooley's Rainwater Conditioning. Two days before the bankruptcy case was filed, Ken Dooley authorized DRC to use his personal Capital One credit card to pay DRC's bankruptcy lawyers their $8,500 retainer fee. Ken testified that this was the maximum amount he had "available" and that he "could afford to provide." Ken "paid" for this charge in January of 2011 by transferring the balance on the credit card to another account that charged zero percent interest so that he could pay off the charge over the next year. Whether Ken Dooley expected to be repaid by DRC is in dispute as is whether he eventually paid the charge with his own money or with the transferred funds he received from debtor.

After the bankruptcy case was filed, DRC again asked Ken to make some online business purchases for it using his Capital One credit card. After Ken agreed to do so, DRC gave him a cashier's check drawn on its bank account for $8,500 on February 28, 2011. Ken promptly deposited this check in his bank account. The parties stipulate that as of February 28, 2011, Ken had not been reimbursed by DRC for the charged retainer fee. The Trustee disputes whether these funds were to be an advance on the contemplated charges Ken agreed to make for the business purchases. Between February 28 and March 9, 2011, Ken charged $8,868.23 on his Capital One credit card account for DRC's purchases of equipment and inventory from its suppliers Kinetico and Solar Panels Plus. These purchases were necessary to the ordinary operation of DRC's business. Ken paid these charges on April 28 using funds from his bank account including the $8,500 cashier's check he had previously deposited in February.

How DRC would have paid for acquiring this equipment before filing is in dispute. Prior to allowing DRC to charge its retainer fee on his credit card, Ken had not loaned DRC or Mike any money; nor did he do so after the equipment and inventory charges mentioned above. At the 341 meeting, someone (either Mrs. Dooley or debtor's counsel) testified that DRC usually paid Kinetico by automatic

debit to debtor's bank account or credit card. When DRC made its first charge on Ken's card, it did not have like amounts on deposit in its bank account, though it did debit that account for another $900 to Kinetico that day.

After conversion, the Trustee sued Ken to recover the $8,500 transfer as an unauthorized post-petition transfer that is recoverable under § 549(a). Ken claims that the transfer was made by DRC in the ordinary course of its business and is therefore authorized under §§ 363 and 1108 of the Bankruptcy Code. Ken moves for summary judgment on these points, but because there remain several disputed material facts, and because the summary judgment record does not support concluding as a matter of law that the transfer was made in the ordinary course, the motion must be denied.

*Analysis*

Section 363(c)(1) of the Code permits a chapter 11 debtor-in-possession to "use property of the estate in the ordinary course of business without notice or a hearing."[7] The use, sale or lease of estate property outside the ordinary course of business requires notice, hearing and court approval.[8] Because material facts remain in dispute, it is impossible to conclude that the defendant is entitled to judgment, particularly where the issue of whether the transaction in question would pass the horizontal and vertical tests of "ordinary course of business" relies so heavily on developing evidence that this defendant has not produced.[9] Even if the facts surrounding the $8,500 transfer are as Ken suggests, there remains considerable doubt that either the horizontal or vertical test can be met on this record. The summary judgment standards require me to view the record in a light most favorable to the non-moving party,

---

[7] *See* COLLIER ON BANKRUPTCY ¶ (16th Ed. 2012), explaining that ordinary course transactions are insulated from § 549 avoidance by their "ordinariness."

[8] Section 363(b)(1).

[9] As noted previously, this would be Ken's burden of proof under Fed. R. Bankr. P. 6001.

-5-

the Trustee, requiring that this matter continue to trial.

Section 549 renders post–petition transfers recoverable by the trustee if they are not authorized by the court or by the Bankruptcy Code. The Court did not approve this transfer in advance so Ken must demonstrate that DRC was authorized by law to make this transfer: that it was authorized to operate its business and that this transfer was done in the ordinary course of that business. As a chapter 11 debtor in possession, DRC was authorized to operate its business by § 1108. Debtors in possession are authorized to use the property of the estate in the ordinary course of their business without a court order by § 363(c)(1). Thus, the main issue here is whether DRC's $8,500 transfer to Ken was made in the ordinary course.

Courts traditionally apply the vertical and horizontal dimension tests to determine if a transaction was done in the debtor's ordinary course of business.[10] A transaction that meets both tests is likely to be in held to be an ordinary course transaction. The vertical dimension test views the transaction from the "vantage point of a hypothetical creditor and inquires whether the transaction subjects a creditor to economic risks of a nature different from those he accepted when he decided to extend credit."[11] Applying this dimension requires reviewing the debtor's pre-petition business practices. Here, there is nothing in the record to support any finding that this method of financing, using another's personal credit card for operating debt, was utilized by the debtor before it filed. Instead, the debtor's principals testified that they would pay for inventory purchases by debiting their bank account either via automated clearing house or the debit card transactions on the company's bank account. Absent any evidence to support that what DRC did post–petition was anything like what it did before the case's filing, I cannot find that the vertical dimension test is met on summary judgment.

---

[10] *See In re Straightline Investments, Inc.*, 525 F.3d 870 (9th Cir. 2008).

[11] *Id.* at 879, citing *In re Dant & Russell, Inc.*, 853 F.2d 700, 705 (9th Cir. 1988).

-6-

Success on the horizontal test is even further from Ken's grasp. There, the question is whether the questioned transaction is similar to one in which similar businesses would ordinarily engage.[12] Again, there are no facts in this record that suggest that businesses like DRC pay cash "advances" to individuals in exchange for the use of the individuals' credit card in acquiring business supplies or inventory. While one might contemplate that a principal of a corporation might use his personal credit to finance operating capital for his business and expect to be repaid, it seems unlikely that the principal would expect the business to advance him the amount he proposed to lend, particularly in circumstances where the amount advanced by the debtor is equal to amount the creditor loaned the debtor pre-petition. As the *Straightline* court put it, did the debtor or creditor do anything abnormal to gain advantage over the other creditors? Even if the facts are as Ken suggests, they probably did. But as the facts surrounding this odd transaction remain in dispute, I cannot determine that the challenged transfer meets the horizontal test on this record either.

My skeptical view of Ken's ordinary course defense is augmented by the fact that the advance he received in February of 2011 was in an amount equal to that which he advanced to pay DRC's bankruptcy retainer. Indeed, someone (either Mrs. Dooley or debtor's counsel) stated on the record at the § 341 meeting that the transfer to Ken was in repayment of the retainer charge. Whether Mrs. Dooley or DRC's counsel made that statement, its having been made by someone on the debtor's "side" casts doubt on the true nature of the debtor's February $8,500 "advance."[13] Determining who said what to whom is a matter for trial, not this motion.

---

[12] *Id.* at 880-881.

[13] Presumably, someone listening to an audio transcription of the first meeting of creditors could immediately distinguish between Mrs. Dooley's and counsel's voices. The written transcript does not indicate that the party speaking is debtor's attorney or anyone else other than the debtor, as transcripts customarily do when someone other than the testifying witness speaks.

-7-

Ken will have the burden of proof on both tests at trial. He will need to develop evidence that supports his contentions and satisfies both the horizontal and vertical tests. On summary judgment, and with material factual issues that bear directly on these issues remaining in dispute, this record does not support a finding that either test is met or that DRC's payment to Ken was made in the ordinary course of DRC's business. Summary judgment is therefore DENIED and the Clerk is directed to set the matter for trial as the court's trial docket permits.

# # #